**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CHRISTOPHER A. JONES<br>Plaintiff,<br>vs.<br>BECKI LOPEZ,<br>Defendant. | 3:00-CV-00509-ECR (VPC)<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**<br><br>February 20, 2007 |

This Report and Recommendation is made to the Honorable Edward C. Reed, Jr., United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendant Becki Lopez's ("Lopez") motion for summary judgment (#238). The plaintiff opposed (#251) and Lopez replied (#254). The court has thoroughly reviewed the record and the motions and recommends that Lopez's motion for summary judgment (#238) be granted in part and denied in part.

## I. HISTORY & PROCEDURAL BACKGROUND

Plaintiff Christopher A. Jones ("plaintiff"), a *pro se* prisoner, is currently incarcerated at Southern Desert Correctional Center ("SDCC") in the custody of the Nevada Department of Corrections ("NDOC") (#264).[1] Plaintiff brings his fourth amended complaint pursuant to 42 U.S.C. § 1983, alleging that Lopez, a guard at Ely State Prison ("ESP"), violated his constitutional rights by destroying his legal papers, by retaliating against him for filing grievances, and by ordering plaintiff to perform activities that were in violation of medical orders

[1] At the time he originally filed his complaint, plaintiff was incarcerated at Ely State Prison (#1).

(#119).[2] Plaintiff names as defendants Becki Lopez ("Lopez"), former ESP Correctional Officer; and "Jane Doe C/O 1 thru 50," ESP Correctional Officers. *Id.*

In count I, plaintiff asserts that Lopez violated his Fourteenth Amendment due process right to access to the courts when she destroyed some of his legal papers (#119, pp. 3-9). Plaintiff alleges that Lopez ordered him to move a two-hundred pound box of legal papers from one cell to another, in violation of his physician's orders which restricted him from lifting heavy objects. *Id*. Plaintiff refused to lift the box and alleges that Lopez then confiscated his property and destroyed some of his legal documents in retaliation for plaintiff's refusal to disobey his doctor's orders. *Id*. According to plaintiff, Lopez denied him access to the courts because the loss of these legal documents hindered the progress of several of his cases, including his post-conviction criminal appeal. *Id*.

In count III[3], plaintiff alleges that Lopez drafted false disciplinary reports against him and harassed him in retaliation for plaintiff filing grievances against her (#119, pp. 10-15). Plaintiff alleges that these false reports hindered his transfer to a less restrictive unit, prevented him from obtaining a job in the law library and "earning funds in which to finance his legal ventures," precluded him from obtaining extra legal research time and assistance, and increased his classification points, which in turn disqualified him for transfer to a medium security prison. *Id*. Plaintiff contends that Lopez's false reports may negatively affect the parole board's

---

[2] Plaintiff originally filed suit in the Seventh Judicial Court of the State of Nevada on August 14, 2000 (#1). On September 29, 2000, defendants removed to federal court pursuant to 28 U.S.C. § 1441. *Id*. Plaintiff filed his first amended complaint on December 5, 2000 (#36); his second amended complaint on March 21, 2001 (#48); his third amended complaint on October 27, 2003 (#77); and his fourth amended complaint on November 11, 2004 (#119). Defendant Becki Lopez filed an answer to plaintiff's fourth amended complaint on January 5, 2005 (#123).

[3] Plaintiff's count II was dismissed pursuant to this court's April 23, 2004 report and recommendation (#95) due to failure to exhaust administrative remedies, and plaintiff carried over the original numbering to his fourth amended complaint.

consideration of his case. *Id*. Plaintiff alleges that the retaliation did not advance the legitimate goals of the prison. *Id*.

The court's review of the evidence reveals that on March 7, 1999, Lopez drafted a notice of charges against the plaintiff for unauthorized use of the phone and use of abusive language (#238, D-MSJ 005). The prison dismissed the charge for unauthorized use of the phone, reduced another charge, and sentenced plaintiff to thirty days loss of personal phone calls. *Id.*, D-MSJ 007. On March 18, 1999, the plaintiff filed a grievance against Lopez, alleging that she had purposely filed a false notice of charges against him on March 7. *Id.*, D-MSJ 024. Plaintiff was then moved to a different unit for almost one year and had no contact with Lopez during this time (#119, p. 10).

On March 21, 2000, back in Lopez's unit, plaintiff was told he was going to be moved to a different cell. When the time came to move his things to his new cell, Lopez told the plaintiff to move his property (#251, Exhibit 29, Plaintiff's Request For Admissions ("RFA) (Second Set), No. 18). The parties disagree as to what happened next. Plaintiff alleges that he told Lopez that he had recently had two back surgeries and that he had a medical restriction against lifting, pushing or pulling heavy objects (#251, Ex. 9). Plaintiff alleges that he requested that Lopez allow the inmate porters to move his footlocker, which was extremely heavy, but that Lopez "began to scream and shout 'get your ass up to 34 too damn bad about your back.'" *Id*. Lopez, on the other hand, asserts that the plaintiff came up to the control bubble and began yelling, "You bitch, I need help, I have a bad back" (#251, Ex. 8). Lopez stated in response to a request for admission that plaintiff "did not state at that time he had a medical restriction against lifting, pushing or pulling," and that had he "shown me his medical papers instead of yelling and being verbally abusive, I could have had staff help him" (#251, Exhibit 29, RFA (Second Set), Nos. 33

and 37).

It is undisputed that Lopez would not allow the inmate porters to move the property (#251, Exhibit 29, RFA (Second Set), Nos. 35 and 39). After the shouting incident, Lopez told plaintiff to go back to his cell, push his property out on the tier, and go to his new cell (#238, D-MSJ 198, Plaintiff's Deposition, p. 75). The plaintiff did this, but grabbed a brown accordion folder and walked to his new cell despite Lopez's order to plaintiff to leave the folder on the tier with the rest of his property (#251, Exhibit 29, RFA (Second Set), No. 21); *see also* #238, D-MSJ 198, p. 76). Lopez confiscated the brown accordion folder (#251, Exhibit 8). Plaintiff alleges that all of the legal documents and materials for his post-conviction habeas case were in the brown accordion folder, and that plaintiff heard and other inmates saw Lopez take papers out of the brown folder and destroy them. *See* #119, pp. 3-4, 9; *see also* #251, Exhibits 1-4 (affidavits of plaintiff's witnesses); *see also* #238, D-MSJ 198, p. 76-77. Lopez denies that she destroyed any documents (#251, Exhibit 28, Amended Answers to RFA, No. 3). Plaintiff alleges that when asked why she was "treating that man's property like that," Lopez responded, "Because he pissed me off" (#119, p. 9).

Lopez admits that this incident made her "irritated" (#251, Exhibit 29, RFA (Second Set), No. 32). Lopez also admits that plaintiff did have a medical restriction against lifting, pushing or pulling heavy objects, *see* #251, Exhibit 29, RFA (Second Set), No. 33, but that she did not confirm the medical restriction until after the incident (#251, Exhibit 29, RFA (Second Set), No. 34).

Lopez filed a notice of charges against plaintiff on March 21, 2000, alleging three violations (#251, Ex. 8). The prison dismissed two of the charges, reduced one charge, and sentenced plaintiff to ten days loss of canteen (suspended) (#238, D-MSJ 010). Although plaintiff

and Lopez disagree as to whether plaintiff used abusive language on March 21, Lopez admits that the prison ultimately dismissed the charge of abusive language (#251, Exhibit 31, RFA, No. 41).

Plaintiff filed two grievances about this incident on March 21, 2000 (#251, Exhibits 9 and 10). He filed two more grievances on March 25 and 26, 2000, alleging that Lopez harassed him, albeit, in admittedly "trivial" ways. *Id.*, Exhibits 11 and 12. On May 6, 2000, Lopez filed a notice of charges against the plaintiff alleging that plaintiff disobeyed an order to remove a towel from his window and that he had been verbally abusive (#238, D-MSJ 012). The prison dismissed one charge, reduced two, and sentenced plaintiff to ten days loss of canteen and phone privileges. *Id.*, D-MSJ 013-014. Plaintiff filed this lawsuit against Lopez in August 2000 (#1). On November 6, 2000, Lopez filed another notice of charges against the plaintiff which resulted in thirty days in disciplinary segregation and thirty days loss of canteen (#238, D-MSJ 015-019).

Plaintiff alleges that months of legal research, including case law outlines, cases sent to him from outside the prison, and notes given to him by outside lawyers and "jailhouse lawyers" who were no longer at ESP, were missing after Lopez destroyed his papers (#119, p. 4). He contends that because he did not have these documents, he filed an unsupported and untimely amended opening brief to the Nevada Supreme Court in his habeas case. The Nevada Supreme Court dismissed his case and denied his petition for rehearing. *Id*. Plaintiff also alleges that this court dismissed his federal habeas appeal based on the fact that he filed an untimely amended opening brief in the Nevada Supreme Court. *Id.*, p. 8.

Lopez moves for summary judgment on both counts (#238). The court notes that the plaintiff is proceeding *pro se*. "In civil rights cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v.*

*Kerner*, 404 U.S. 519, 520-21 (1972).

## II. DISCUSSION & ANALYSIS

### A. Discussion

#### 1. Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where no material factual disputes exist. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994). In deciding whether to grant summary judgment, the court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). In inmate cases, the courts must

> distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, __ U.S. __, 126 S.Ct. 2572, 2576 (2006). The court grants summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting evidence which demonstrates the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317 , 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson*, 477 U.S. at 248.

**2. Meaningful Access to the Courts**

Pursuant to the Fourteenth Amendment due process clause, inmates have a "fundamental constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). That access must be "adequate, effective, and meaningful." *Id.* at 822. To show a violation of this right to access to the courts, an inmate must demonstrate "actual injury," in that there was a "specific instance" in which he was denied access. *Sands v. Lewis*, 886 F.2d 1166, 1171 (9th Cir. 1989); *see also Lewis v. Casey*, 518 U.S. 343, 349 (1996). "The injury requirement is not satisfied by just any type of frustrated legal claim;" the Court has stated that prisoners have a right to access to the courts only in relation to direct appeals from the convictions for which they were incarcerated, habeas petitions or civil rights actions challenging the conditions of their confinement. *Casey*, 518 U.S. at 354-55.

The Ninth Circuit has held that a prisoner states a claim for a due process infringement in violation of his right to meaningful access to the courts if prison authorities confiscate his legal documents and materials. *Vigliotto v. Terry*, 873 F.2d 1201, 1202 (9th Cir. 1989), *citing DeWitt v. Pail*, 366 F.2d 682, 686 (9th Cir. 1966). However, the "temporary deprivation of an inmate's legal materials, does not, in all cases, rise to a constitutional deprivation." *Id.* at 1202-03.

**3. First Amendment Retaliation**

Prisoners have a right to meaningful access to the courts, and prison authorities may not penalize or retaliate against an inmate for exercising this right. *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995). This right of access extends to established prison grievance procedures. *Id.* Prison officials may be sued under Section 1983 for retaliating against a prisoner for exercising his or her constitutional rights. *Pratt v. Rowland*, 65 F.3d 802, 806 & n.4 (9th Cir. 1995). A retaliation claim involves five elements: "(1) An assertion that a state actor took some

adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2004).

Retaliation claims must be evaluated in light of the deference accorded to prison officials. *Id*. at 807. The inmate bears the burden of pleading and proving the absence of legitimate correctional goals for the alleged retaliatory action. *Id*. at 806; *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003).

**B. Analysis**

**1. Count I**

In count I, plaintiff asserts that Lopez violated his Fourteenth Amendment right to meaningful access to the courts when she Lopez destroyed some of his legal papers, "in retaliation for plaintiff refusing to violate his doctor's orders and risk injury" (#119, p. 3).

**a. Retaliation Claim**

Initially, plaintiff argues that count I contains both an access to the courts claim as well as a retaliation claim (#251, pp. 25-27; *see also* #119, p.3). Plaintiff contends that he has a constitutional right to be "secure in his physical well being and or person and be free from cruel and unusual punishment" and, as such, had a right to refuse any activities which could cause him unnecessary pain (#251, pp. 25-27). He argues that he cannot be subjected to retaliatory adverse consequences for refusing activities that would violate this constitutional right. *Id*. Although he acknowledges that most retaliation cases involve retaliation for exercising a First Amendment right, plaintiff asserts that he can also state a retaliation claim based on "any constitutional right not inconsistent with the status as a prisoner." *Id*. (*citing Rhodes v. Robinson*, 380 F.3d 1123,

1131 (9th Cir. 2004) for the proposition that "[any] retribution visited upon a prisoner due to his decision to engage in **protected conduct** is sufficient to ground a claim of unlawful First Amendment retaliation") (emphasis in #251).

Plaintiff argues that "the protected constitutional conduct doctrine is not distinct nor exclusively applicable to First Amendment issues...," and cites to *DeShaney v. Winnebago*, 489 U.S. 189, 199-200 (1989) in support of this proposition (#251, p. 27). However, *DeShaney* is not a prisoner retaliation case; it is a due process case that generally references certain rights afforded prisoners under the Eighth and Fourteenth Amendments. Similarly, *Rhodes v. Robinson*, 380 F.3d 1123, 1131 (9th Cir. 2004), which plaintiff also cites in support of his claim, does not hold that a prisoner can base a retaliation claim on rights other than exercise of his First Amendment rights.[4]

Historically, retaliation claims have been based only on the exercise of an inmate's First Amendment rights, not on the exercise of "any" constitutional right. The court does not have a case before it which allows prisoners to base a retaliation claim on the exercise of the prisoner's Eighth or Fourteenth Amendment rights. Therefore, the court declines to adopt plaintiff's suggested cause of action.

Additionally, review of the cases plaintiff cites reveals that, aside from a retaliation claim, he appears to be arguing that he has stated a substantive due process claim under the Fourteenth Amendment. Plaintiff cites to *McRorie v. Shimoda*, 795 F.2d 780 (9th Cir. 1986), in which the Ninth Circuit held that prisoners may state a claim for a Fourteenth Amendment due process violation by alleging a liberty deprivation and a lack of due process. *Id*. at 784. The court in

---

[4] Moreover, the Ninth Circuit *amended and superseded on denial of rehearing* the Rhodes opinion plaintiff cited, *see Rhodes v. Robinson*, 408 F.3d 559 (9th Cir. 2005), and the amended version does not contain the same phrase quoted by the plaintiff.

*McRorie* stated that "prisoner allegations of guard brutality state a claim under section 1983 because conduct that amounts to brutality violates the prisoner's "right to be secure in one's person,' a liberty interest protected by the Due Process Clause of the Fourteenth Amendment." *Id*. at 785. Plaintiff argues that he "clearly cites to the 14th Amend. in count I" (#251, p. 26). However, even liberally construing the *pro se* plaintiff's complaint, he has nowhere alleged a liberty interest or a lack of due process based on his right to be "secure in his person." *See* #119. Plaintiff's citation to the Fourteenth Amendment in count I involves his access to the courts claim. *Id*., p.3.

The court construes count I as a Fourteenth Amendment access to the courts claim and count III as a First Amendment retaliation claim. To the extent that the plaintiff brought count I as a retaliation claim, the court grants Lopez's motion for summary judgment because the plaintiff failed to allege in count I that he engaged in First Amendment conduct.

**b. Access to the Courts Claim**

The crux of Lopez's many arguments in relation to plaintiff's access to the courts claim is that plaintiff is unable to prove he incurred an "actual injury" (#238, p. 3). Specifically, Lopez contends that pursuant to *Lewis v. Casey*, 518 U.S. 343 (1996), the right of access to the courts entails only filing a complaint, not "effective" litigation; therefore, because plaintiff was already two years into his habeas appeal when his legal papers were allegedly confiscated and destroyed,[5] Lopez did not deny plaintiff access to the court. *Id*., p. 18. Plaintiff "clearly" had access to the

---

[5] The court concludes that there is an issue of fact as to whether Lopez ever took and destroyed plaintiff's legal documents – plaintiff alleges she did (#119, pp. 3, 9); she denies this (#251, Exhibit 28, p. 2, Request for Admission No. 3). However, the court concludes this issue is not material to the access to the courts claim. Lopez is challenging the "actual injury" prong of the plaintiff's access to the courts claim. Even assuming that Lopez did destroy the documents, if plaintiff cannot establish that this caused him "actual injury," summary judgment must be granted in favor of Lopez. Since the court concludes below that plaintiff did not incur an actual injury, the issue of fact as to whether Lopez destroyed his documents is not material to count I.

Nevada Supreme Court to effect his habeas corpus appeal because he filed his notice of appeal on July 18, 1997, his opening brief on December 15, 1997, and maintained contact with the court over the next few years regarding his litigation. *Id*., pp. 18-19, *citing* D-MSJ 037-146. Lopez notes that plaintiff's amended opening brief was forty-three (43) pages compared to his original opening brief, which was ten (10) pages and that his amended opening brief introduced new issues. *Id*., pp. 20-21. While the Nevada Supreme Court denied his habeas appeal only three days after the plaintiff filed his amended opening brief on September 8, 2000, *see* D-MSJ 053-054, Lopez notes that plaintiff petitioned the court for rehearing based on the fact that the Court had overlooked certain issues in his amended opening brief (#238, p. 21). On December 29, 2000, the Court denied the plaintiff's request for rehearing. *Id*., *citing* D-MSJ 042.

Lopez argues that the plaintiff cannot demonstrate he suffered actual harm; moreover, he cannot even demonstrate a causal connection between the loss of his legal documents and the denial of his habeas appeal. *Id*., pp. 21-22. Lopez contends that the Nevada Supreme Court "fully considered" plaintiff's amended opening brief, basing this contention on a footnote in the Court's September 11, 2000 order, which stated that the Court had "considered all proper person documents filed or received in this matter, and we conclude that the relief requested is not warranted." *Id*., p. 22, *citing* D-MSJ 054. Lopez points out that the plaintiff's petition for rehearing notably did *not* contend that plaintiff filed his amended opening brief later than anticipated because he had lost his legal documents; rather, plaintiff argued in his petition for rehearing that the Court had overlooked his amended opening brief as it had been filed only three days prior to the Court's decision. *Id*. The Court's denial of plaintiff's petition for rehearing contained the same footnote as its original dismissal – that the Court had considered all documents in the file. *Id*., pp. 22-23, *citing* D-MSJ 042. Lopez argues that because the Nevada

Supreme Court considered all of plaintiff's filings in his habeas case, including his amended opening brief, no jury would be able to determine "how the Nevada Supreme Court Justices *should have, could have, or would have ruled* on Plaintiff's Habeas Corpus Appeal" had plaintiff had his legal documents. *Id*., p. 23 (emphasis in original).

Plaintiff alleges that his destroyed legal papers prevented him from filing a *complete* amended opening brief in his habeas case, and that when he did file it, it was much later than planned.[6] *Id*. Plaintiff's position is that his fundamental right of access to the courts may not be "impaired," and this entails "all phases of litigation" (#251, p. 21). Plaintiff cites *Griffin v. Illinois*, 351 U.S. 12, 20 (1956) for the premise that the purpose of the right of access to the courts is to allow an inmate to vindicate his legal rights. *Id*. Plaintiff contends that the argument in *Casey* that defendants depend upon – that the right of access to the courts entails only filing a complaint, not "effective" litigation – is *dicta*. Plaintiff also attempts to distinguish *Casey* by arguing that the right to file a habeas appeal is fundamental and may not be "impaired," *see Ex Parte Hull*, 312 U.S. 546 (1941) *and Johnson v. Avery*, 393 U.S. 383 (1969), and *Casey* dealt with access to law libraries and assistance from the state, not the "actively [sic] imposition of barriers" such as the destruction of legal papers. *Id*., pp. 24, 30. Therefore, *Casey* does not apply.

Plaintiff alleges two actual injuries – the dismissal of his state habeas case and the dismissal of his federal habeas case. He notes that current law requires that he bring all claims on appeal or waive them, which was why he filed an amended opening brief in the Nevada Supreme Court (#251, p. 23). Plaintiff first asserts that he suffered actual harm by his inability to bring "new, clearer and verifiable facts and case law in his amended brief" to the Nevada

---

[6] Plaintiff testified that there is no specific deadline to submit an amended opening brief to the Nevada Supreme Court. The plaintiff must submit an amended brief prior to the time when the Court renders its decision (#238, D-MSJ 221, p. 166).

Supreme Court and was further harmed as a result of the Nevada Supreme Court's dismissal in relation to his subsequent federal section 2254 litigation. *Id.* Plaintiff next asserts that the injury pertaining to his federal section 2254 litigation is "traceable" to Lopez's destruction of his legal papers based on the language in this court's order dismissing his section 2254 claims, which stated:

> If anything, this court is even more convinced, after again reviewing the state court record, that Grounds Two and Eight are unexhausted. To demonstrate that these claims were fairly presented [sic] the Nevada Supreme Court, petitioner relies on arguments he included in an "amended opening brief" to the state's highest court. Docket #19, Exhibit 90. Petitioner's initial opening brief was filed in that matter on December 15, 1997. *Id.*, Exhibit 87. The amended brief which petitioner relied upon for exhaustion purposes was received by the Nevada Supreme Court nearly three years later on Friday, September 8, 2000. The Nevada Supreme Court filed its order dismissing the appeal on the next business day – September 11, 2000. *Id.*, Exhibit 91. As such, petitioner did not give the Court a fair opportunity to review his amended brief before the Court issued its decision. Consequently, this court cannot conclude that arguments contained in the amended brief effected [sic] state court exhaustion of Grounds Two and Eight. *See Solis v. Garcia*, 219 F.3d 922, 930 (9th Cir. 2000).

*See* #251, Exhibit 23.

Lopez claims that the statements this court made in dismissing plaintiff's federal habeas petition would not be admissible because this court's comments are "inherently speculative" regarding what the Nevada Supreme Court was able to accomplish (#251, n.3). Lopez also argues that the fact that the Nevada Supreme Court reconsidered the plaintiff's amended opening brief and denied rehearing is evidence that this court was incorrect. *Id.*, p. 10. Whether plaintiff *would have* won his habeas case in the Nevada Supreme Court had his legal documents not been taken is too speculative to be a basis for the "actual injury" prong of an access to the courts claim. *Id.*, p. 8. Since speculative evidence is not admissible at trial, and because a party may not rely on

evidence that is inadmissible at trial when opposing a motion for summary judgment, the plaintiff, is unable to establish actual injury. *Id.*, pp. 8-10.

As the moving party, Lopez has the burden of submitting evidence which demonstrates the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317 , 323 (1986). To prove a Fourteenth Amendment access to the courts violation, a plaintiff must demonstrate "actual injury," in that there was a "specific instance" in which he was actually denied access to the courts. *Sands v. Lewis*, 886 F.2d 1166, 1171 (9th Cir. 1989); *see also Lewis v. Casey*, 518 U.S. 343, 349 (1996).

Plaintiff testified that Lopez took his "brown accordion folder," which contained the documents for his post-conviction criminal appeal, *see* #238, D-MSJ 198-199, pp. 76, 80, and that when he got his property back a couple of hours later, neither the brown folder nor the habeas documents were present. *Id.*, pp. 85, 87. He testified that some of the missing documents were "irreplaceable" because they included arguments drafted by certain jailhouse lawyers who were no longer at ESP in March 2000. *Id*, pp. 181-185. Plaintiff further testified that he had begun working on his amended opening brief in December 1999, and at the time Lopez allegedly took his documents, he had "just about everything," and needed only to put the brief "in the proper format" (#238, D-MSJ 218-219, pp. 157-158). He testified that it took him from March 2000 until September 2000 to put the brief together, and that he would have put together a "better" brief but for the destruction of his documents. *Id*, p. 161.

The issue before the court then, is whether the destruction of plaintiff's allegedly "irreplaceable" legal materials and his inability to put together a "better" brief caused the plaintiff actual injury?

Plaintiff contends that numerous circuits, including the Ninth Circuit, have held that the

confiscation of legal materials, which are crucial to an ongoing appeal, constitutes "actual injury" (#251, pp. 30-31). Lopez replies that the cases cited by plaintiff pre-date *Casey*, are not on point, and are not controlling authority in the Ninth Circuit (#254, p. 14). The court conducted a review of every case plaintiff cited in support of the foregoing argument. First, with the exception of two Ninth Circuit cases, plaintiff does not cite controlling authority. Second, the procedural posture of these cases distinguishes them. Plaintiff has indeed provided support for the proposition that the confiscation or destruction of legal documents or files *may* constitute a violation of the plaintiff's right to access to the courts – this is clearly indicated by plaintiff's cited cases.[7] However, with the exception of one case, which was at the summary judgment stage, but is not controlling authority,[8] each of plaintiff's cited cases was at the motion to dismiss or injunction stage. Notably, the plaintiff has already passed this procedural stage, as is evident by his Ninth Circuit appeal in this very case. *See* #s 65-67 *and Jones v. Lopez*, 68 Fed. Appx. 798 (9th Cir. 2003) (unpublished) (holding that plaintiff had stated a claim for a violation of his right to access to the courts based on the fact that Lopez allegedly destroyed his documents). These proceedings are now at the summary judgment stage. Plaintiff presents no case law standing for the proposition that destruction of legal materials is a *per se* violation of the plaintiff's Fourteenth Amendment due process right to access to the courts. Therefore, plaintiff must submit admissible evidence in response to Lopez's contention that there are no genuine issues of fact as to whether he was actually injured. This plaintiff has not done.

The record before the court reveals that the plaintiff filed his opening brief in his state habeas appeal on December 15, 1997 (#238, D-MSJ 129-143). The brief contained three

---

[7] For purposes of brevity, the court does not cite to each of these cases. However, citations may be found in plaintiff's opposition (#251, pp. 30-31).

[8] *Oxendine v. Williams*, 509 F.2d 1405 (4th Cir.1975).

arguments and was ten pages long. *Id*. Over the next two years, the plaintiff maintained contact with the Nevada Supreme Court. *Id*., D-MSJ 120-128. The plaintiff filed his amended opening brief on September 8, 2000. *Id*., D-MSJ 066-119. Plaintiff included his three original arguments and added six new arguments, making his amended brief forty-three pages long. *Id*. On September 11, 2000, the Nevada Supreme Court dismissed plaintiff's appeal, agreeing with the district court that plaintiff's arguments lacked merit. *Id*., D-MSJ 053-064. Plaintiff filed a petition for rehearing on October 2, 2000, arguing that the Court had overlooked the grounds argued in his amended brief. *Id*., D-MSJ 044-052. The Court denied rehearing on December 29, 2000, stating that it had considered all filed documents. *Id*., D-MSJ 042.

First, the court notes that the Nevada Supreme Court denied plaintiff's petition for rehearing without comment. *Id*. ("Rehearing denied. NRAP 40. It is so ordered."). This is counter to the plaintiff's testimony that the Court stated that his amended brief was "deficient." *See* #238, Plaintiff's Deposition, D-MSJ 222, p. 170 (Question: "Did the Court give you reasons why?" Answer: "Yes, because the arguments that I was bringing weren't able, they were deficient as opposed to what I was going to take, how I was going to buff them up."). Second, the court agrees with Lopez that the Nevada Supreme Court reviewed and considered all of plaintiff's arguments when considering the brief on rehearing. Merely because the Nevada Supreme Court denied rehearing does not prove that plaintiff filed a deficient brief. The fact that plaintiff included *six* additional arguments in his amended opening brief belies his contention that "all he could do is rehash the deficient arguments previously submitted" (#251, p. 2).[9] Third, had the Nevada Supreme Court's order specifically stated that plaintiff's legal arguments were deficient

---

[9] *See also* p. 16, Plaintiff's Affidavit, ¶ 19 ("The destruction of legal materials caused a deficiency in the NV Sup Ct. Brief by impeding without justification plaintiff's ability to bolster the ineffective assistance of counsel arguments... all the plaintiff could do is **rehash** old arguments that had actually been displaced/would have been displaced by the material that was destroyed") (emphasis in original)).

or that he failed to address a pivotal issue in his case, this might buttress his claim of actual injury. However, the order is silent concerning the basis for its denial of rehearing, and it is pure speculation whether plaintiff *could* have made additional arguments, but for the destruction of his papers. It is even more speculative whether the Nevada Supreme Court would have viewed the brief differently. Moreover, plaintiff points to no case law that supports his argument that he has a constitutional right to draft a "better" brief. Indeed, many attorneys wish they could have drafted a "better" brief in hindsight.

Plaintiff cites to Supreme Court case law, which states that the right to file a petition for habeas corpus may not be impaired. *See* #251, p. 22, *citing Johnson v. Avery*, 393 U.S. 483 (1969) *and Ex Parte Hull* 312 U.S. 546 (1941). He further cites *Griffin v. Illinois*, 351 U.S. 12, 20 (1956) for the proposition that he has the right to effective judicial review. These are indeed the holdings of these cases; however, the court cannot conclude that there is any evidence before it to establish that the destruction of his legal documents either impaired his right to file his habeas claim or prevented the Nevada Supreme Court from effectively reviewing it. Plaintiff *did* in fact file an original and amended opening brief, albeit, later than he desired.[10] Moreover, plaintiff has provided no proof, aside from his own assertions that he would have included other unnamed arguments, that he did not receive effective judicial review.

The record also indicates that plaintiff filed his federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on February 7, 2001 in this court (#238, D-MSJ 150, Docket No. 6; *see also generally* 3:01-cv-00038-DWH (VPC)). The court assigned a federal public defender

---

[10] As an aside, the court notes that during this time period, in which the plaintiff testifies that he *would* have filed his amended opening petition much earlier than September 8, 2000, if not for the destruction of his documents, plaintiff drafted and filed a complaint in this very case (#1 (complaint filed August 14, 2000)). Clearly, plaintiff did not spend all of his time between March 2000 and September 2000 working on the amended opening brief in his habeas case.

to plaintiff's case (#238, D-MSJ 150, Docket Nos. 7 and 14). Plaintiff filed his first amended petition on February 21, 2002 and his second amended petition on April 9, 2002, both with the assistance of counsel. *Id.*, D-MSJ 150-151, Docket Nos. 15 and 26. On February 26, 2003, the district court found that the plaintiff had submitted a "mixed" petition in that plaintiff had not properly exhausted two of his claims. *Id.*, D-MSJ 155-163, Docket No. 37. The court gave plaintiff the choice of culling the unexhausted claims from his petition and proceeding with the exhausted claims, or dismissing his habeas case and returning to state court to exhaust his two claims. *Id.*

Plaintiff petitioned for reconsideration, again with the assistance of counsel. *See* 3:01-cv-00038-DWH (VPC), Docket No. 39. In his motion for reconsideration, plaintiff argued that he had raised the two "unexhausted" claims in his amended opening brief before the Nevada Supreme Court. *Id.* On July 21, 2003, the district court stated that it was "even more convinced" that the plaintiff had not exhausted due to fact that he submitted his amended opening brief only one business day before the Nevada Supreme Court had rendered its decision, leaving the Court no fair opportunity to review his claims (#251, Exhibit 23; *see also* 3:01-cv-00038-DWH (VPC), Docket No. 43). Rather than notifying this court that the Nevada Supreme Court had indeed considered plaintiff's amended opening brief on his petition for rehearing, plaintiff elected to dismiss the entire petition and return to state court to exhaust. *See* #238, D-MSJ 171-172; *see also* 3:01-cv-00038-DWH (VPC), Docket Nos. 44-46. On October 18, 2005, again with the assistance of counsel, the plaintiff filed a motion to reopen his section 2254 case, which the district court granted and opened under a new case number. *See* #238, D-MSJ 173-175; *see also* 3:01-cv-00038-DWH (VPC), Docket Nos. 51 and 53. Plaintiff's case is currently pending before this court. *See* 3:05-cv-0582-LRH (VPC).

The court concludes that the plaintiff did not incur actual injury in relation to the dismissal of two claims in his federal habeas case. Petitioner could have informed this court that the Nevada Supreme Court had considered the "unexhausted" claims pursuant to his petition for rehearing, however, he chose not to do so. Moreover, this court reopened plaintiff's case and has considered his claims on their merits.

Plaintiff argues that Lopez hindered his access because he did not have the arguments set out by certain jailhouse lawyers who had been assisting him (#251, p. 31).[11] However, plaintiff's contention that he was not able to litigate effectively without the arguments prepared by other jailhouse lawyers is not accurate. This court is very familiar with plaintiff, as he has brought a number of federal claims. The court finds that plaintiff is a very capable *pro se* litigant who generally presents organized, clear and creative arguments. Therefore, plaintiff's contention that his brief would have been "better" with the arguments drafted for him by jailhouse lawyers with "far more experience" falls short.

Although the court recommends summary judgment be granted in favor of Lopez on count I, the court notes that there is a factual dispute whether Lopez destroyed plaintiff's legal documents. Lopez denies having done so, but plaintiff and four other inmates have offered affidavits to the contrary. The destruction of an inmate's legal papers, research and court documents is a very serious concern to the court. Given the obvious constraints of incarceration, limited access and use of the prison law library, limited availability of inmate law clerks, as well as the time and cost of inmate litigation, the destruction of such papers can be tremendous setback to a *pro se* inmate. The court is mindful of the seriousness of this issue, but nevertheless

[11] "In the case at bar, the plaintiff is not claiming that he was denied an opportunity to adequately formulate what might have been a more effective legal argument, but in fact, **such better** and more detailed arguments prepared by [others] using additional and irreplaceable material was destroyed. And that those [others] had far more experience than the plaintiff" (#251, p. 31).

concludes that plaintiff cannot demonstrate an actual injury.[12] Therefore, the plaintiff cannot prove that he was denied access to the courts. The court grants summary judgment in favor of Lopez as to count I.

**2. Count III**

In count III, plaintiff alleges that Lopez drafted false disciplinary reports against him and harassed him, including by destroying his legal materials as set out in count I, in retaliation for plaintiff filing grievances against her (#119).

Lopez contends that she drafted her disciplinary reports *before* the plaintiff engaged in any protected conduct by filing grievances, and, as such, plaintiff cannot prove that Lopez retaliated against him (#238, p. 25). To support this argument, Lopez notes that she filed a disciplinary report about the plaintiff on March 7, 1999, which the prison served on plaintiff on March 9, 1999. *Id*., p. 26, *citing* D-MSJ 005. Plaintiff thereafter filed grievance regarding this incident alleging the March 7, 1999 notice of charges was false. *Id*., *citing* D-MSJ 024.

Lopez also contends that the prison's findings that the plaintiff was "guilty" of

---

[12] The court is aware of the recent Ninth Circuit case addressing an inmate's right to meaningful access to the courts, and finds that the case is distinguishable. *See Phillips v. Hust*, __ F.3d __, 2007 WL 446593 (9th Cir., Feb. 13, 2007). In *Hust*, the court found that the prison librarian had prevented Phillips from timely filing his petition for certiorari in the United State Supreme Court by refusing to allow him to use the prison's binding machine, although Phillips had been allowed to use it in the past. *Id*. at *1. After the plaintiff finally obtained access to the binding machine, he filed his petition, which the Supreme Court rejected as untimely. *Id*. The Ninth Circuit held that the prison librarian's actions constituted actual injury that had caused "actual prejudice with respect to contemplated or existing litigation." *Id*. at *3. The court found that Phillips did not have to prove that he would have been successful on the merits to prove actual injury. *Id*. at *4.

*Hust* is distinguishable from this case. In *Hust*, there was a clear cause-and-effect between the defendant's actions and the loss of opportunity – had the prison librarian not prevented the plaintiff from using the binding machine, Phillips would have filed his petition on time and the Supreme Court would not have rejected it as untimely. Clearly, the defendant's action caused the plaintiff's injury. In this case, there is no such cause-and-effect. The plaintiff *did* file an amended opening brief and the Nevada Supreme Court *did* consider it on its merits. The plaintiff is not able to prove that the destruction of his documents led the plaintiff to file his amended opening brief late or that the loss of his legal documents caused him to write a deficient brief, which in turn caused the Nevada Supreme Court's denial. As the court has already concluded, this cause-and-effect is too speculative.

disciplinary violations demonstrates that there was "some evidence" to support the facts in her disciplinary reports. *Id*., p. 28. Lopez contends that any "not guilty" finding proves that plaintiff suffered no adverse action for alleged retaliation (#238, p. 25). As to the dismissed charges, Lopez contends that the fact that the charges carried a "punitive stigma" or "adverse action" is speculation on plaintiff's part. *Id*.

Plaintiff's position is that his relationship with Lopez involved a pattern of harassment that began in March 1999 and continued to intensify every time the plaintiff came into contact with Lopez (#251, p. 28). Plaintiff alleges that after he filed the March 1999 grievance against Lopez complaining about "false" charges Lopez allegedly filed in February 1999, Lopez began a campaign of retaliation against the plaintiff, starting with the destruction of his legal documents on March 21, 2000. *Id*. Plaintiff alleges that he filed grievances on March 21, 25 and 26, 2000, which resulted in Lopez filing more "false" charges against him on May 6, 2000. *Id*. Plaintiff avoided serious punishment for all of Lopez's charges until November 2000, when the prison sentenced him to thirty days in disciplinary segregation. *Id*. Plaintiff also contends that the "some evidence" standard does not apply to shield retaliation claims. *Id*., pp. 28-29.

Lopez replies that plaintiff has come forward with no evidence that Lopez falsified her disciplinary reports, and merely infers that they were false because some of the charges were dismissed (#254, p. 17). She argues that because the prison never completely dismissed a charge, and some element of each charge was always upheld, obviously plaintiff was guilty of the conduct she alleged in the disciplinary reports, indicating the truth of the report. *Id*.

**a. The "Some Evidence" Standard**

Lopez asserts that the court must apply a deferential "some evidence" standard to the decision made to find plaintiff guilty of Lopez's notice of charges (#238, pp. 9 and 28). Plaintiff

argues that this standard does not apply to retaliation claims (#251, pp. 28-29).

In *Hines v. Gomez*, the Ninth Circuit held that while the deferential "some evidence" standard applied to "a prison disciplinary board's finding of a rule violation," the standard did not apply to "a prison guard's initial accusation of a rule violation where the guard's accusation itself allegedly is false and retaliatory." *Hines v. Gomez*, 108 F.3d 265, 268 (9th Cir. 1997). The court based its decision on its reading of *Superintendent v. Hill*, 472 U.S. 445 (1985), in which the Supreme Court found that a prisoner is afforded procedural safeguards such as advance notice and the opportunity to attend and present evidence when a disciplinary board makes a decision but is not afforded these safeguards when a prison official makes her initial accusation. *Id*. at 268-69. The Ninth Circuit subsequently clarified in *Bruce v. Ylst*, 351 F.3d 1283 (9th Cir. 2003) that "In *Hines,... we held that the 'some evidence' standard of Hill did not apply to retaliation claims.* The 'some evidence' standard applies only to due process claims attacking the result of a disciplinary board's proceeding." *Ylst*, 351 F.3d at 1289 (emphasis added).

In this case, it is clear that the plaintiff is not challenging the findings of the disciplinary board on due process grounds, although he does maintain his innocence in relation to Lopez's disciplinary charges. Instead, plaintiff is alleging the situation in *Hines*, that Lopez's "initial accusation of a rule violation" is itself "false and retaliatory." Because there is no due process violation alleged, only a retaliation claim, the deferential "some evidence" standard does not apply.[13] *Ylst*, 351 F.3d at 1289.

**b. Retaliation Claim**

First, the court addresses Lopez's contention that she drafted her disciplinary reports *before* the plaintiff engaged in any protected conduct by filing grievances (#238, p. 25). Noting

[13] The court notes that Lopez failed to cite to *Hines v. Gomez*, 108 F.3d 265 (9th Cir. 1997) in making her "some evidence" argument. The rule in *Hines* is straightforward and it should be clear to counsel that it is applicable here.

that she filed a disciplinary report about the plaintiff on March 7, 1999, which the prison served on plaintiff on March 9, 1999, Lopez argues that the plaintiff *thereafter and in response,* filed a grievance regarding this incident. *Id*., p. 26. Therefore, Lopez argues, there could be no retaliation because the plaintiff had not exercised his First Amendment rights prior to Lopez issuing a disciplinary notice. *Id*., p. 26.

A review of plaintiff's deposition testimony demonstrates that counsel explored the "cause-and-effect" issue extensively during plaintiff's deposition. Plaintiff *clearly* testified that his claim of retaliation is based on the following sequence of events: on March 18, 1999, plaintiff filed a grievance complaining that Lopez had filed false charges against him on March 7, 1999; on March 21, 2000, Lopez destroyed his legal papers and drafted a false disciplinary report in retaliation for the March 18, 1999 grievance; Lopez continued to draft false disciplinary reports in retaliation for plaintiff's grievances. *See* #238, Plaintiff's Deposition, D-MSJ 190, p. 44 ("The [March 7, 1999 notice of charges] just set the stage. The retaliation started after [the March 18, 1999 grievance against Lopez]. That starts the basis of the retaliation"); *see also* D-MSJ 191 pp. 48-49 ("The basis is when I grievance [sic] about my claims, that she made falsehood and outright lies, and she came back and started retaliating against me regardless of what happened in [the March 7, 1999] disciplinary, which is really not part of the case per se. The issue is the retaliation that ensued after I grievanced [sic]... . The issues of the Complaint actually started after I grievanced [sic]"); *see also* D-MSJ 191 p. 49 (Q: "So [the March 7, 1999 disciplinary report] was a triggering point for your writing a grievance which further triggered retaliation, is that correct?" A: "Yes, you can summarize it as that"); *see also* D-MSJ 192 pp. 50-51 ("That is not where the retaliation lies. That is not what the Complaint is about. The Complaint is about what happened after I complained about what she wrote [on March 7, 1999]"); *see also* D-MSJ 193, p. 55 ("but

as far as retaliation alleged in the Complaint, it started after I complained about [her March 7, 1999 report]"). Plaintiff clearly is *not* alleging, as Lopez asserts he is, that Lopez's March 7, 1999 "false" disciplinary report is the retaliation at issue in count III. It should be more than clear to counsel that the plaintiff claims retaliatory action based on his March 18, 1999 grievance. The court rejects Lopez's "tail-wagging-the-dog" argument.[14]

Lopez has the burden of submitting evidence which demonstrates the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317 , 323 (1986). To refute a claim of retaliation, Lopez has the burden to demonstrate that there are no genuine issues of fact as to at least one of the elements of the retaliation claim, and that as a result, the plaintiff is not able to prove that element. To prove a retaliation claim, the plaintiff must prove (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2004).

Lopez's main claim is the plaintiff is not able to prove that her actions were adverse to him (#238, pp. 26-29). The plaintiff claims that he has suffered adverse consequences because Lopez's allegedly false disciplinary reports – whether the prison found him guilty or not guilty – remain on his disciplinary record for prison officials to consider (#251, pp. 28-29).

[14] Counsel is admonished that he should very carefully weigh the arguments he makes to the court. The court finds that there are several extraneous arguments counsel made in the motion for summary judgment and the reply, which are irrelevant to the core legal issues at hand: whether Lopez hindered the plaintiff's access to the courts by allegedly destroying his documents and whether the defendant retaliated against the plaintiff for exercising his First Amendment rights. Extraneous arguments such as the one just discussed, which counsel should have known was settled as a result of the plaintiff's deposition, are distracting and wasteful of the court's time. Although the court acknowledges that it is counsel's right to make procedural arguments, certain procedural arguments which attempt to gloss over plaintiff's *pro se* status are also extraneous. The court will generally give *pro se* litigants some leeway, as is the rule in *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

As to the charges for which the prison found plaintiff guilty, plaintiff testified that he is not guilty of those charges and that the original charges themselves were retaliatory. *Id*., D-MSJ 188, p. 36. Plaintiff notes that the prison sentenced him to punishment for each guilty verdict, which is adverse because a guilty finding "adds points to your institutional record, which had the effect of not allowing you to get a transfer in a certain situation. There is [sic] certain situations of institutional life that are called yard points that compile based on Notices of Charges." *Id*., D-MSJ 188, p. 37. Plaintiff testified that a write-up at ESP means an inmate is not eligible for a transfer to a less restrictive unit for six months. *Id*., D-MSJ 211, p. 129. This "six-month disciplinary-free" rule also applies to eligibility for prison jobs (p. 131), which in turn had the negative consequence for the plaintiff of depriving him of funds, research time, and assistance he would have been privy to with a law library position. *Id*., D-MSJ 212, p. 131-32. A guilty charge also resulted in classification points, which in turn prevents a transfer to a less restricted institution. *Id*., D-MSJ 212-23, pp. 133-34.

As to the dismissed charges, plaintiff interprets the fact that the prison dismissed some of the disciplinary charges brought by Lopez to mean that those charges were necessarily false (#238, D-MSJ 205, pp. 103-104). Lopez's position is that charges are occasionally dismissed in a prison setting due to leniency or other reasons, not because the original charges were false, and that any supposition that the prison held the dismissed charges against the plaintiff is speculation on plaintiff's part. *Id*., p. 104; *see also* #238, p. 29. Plaintiff testified that it is his assertion that even if an inmate is found not guilty of a charge or a charge is dismissed, prison officials may determine that the notice of charges could violate the "six month rule," because "they could view it any way they want." *Id*., D-MSJ 212, p. 130. He further testified that all dismissed charges, although they may carry no classification points, remain on an inmate's record. *Id*., D-MSJ 185,

p. 25.[15]

Plaintiff does admit, however, that he could not "testify that any adverse actions result[ed] from" charges the prison dismissed. *Id.*, D-MSJ, p. 29; *see also* D-MSJ 204, p. 100 (testifying that there is a "mark on my record" from dismissed charges, but that he could not testify how it had caused him harm). However, plaintiff also testified that he could not say that these dismissed charges were *not* held against him in any way. *Id.*, D-MSJ, p. 30 ("I have no direct knowledge that the dismissal has been used against me one way or the other. I don't have any knowledge that it hasn't been used against me").

The court finds that there is a genuine issue of material fact as to whether the plaintiff suffered adverse action as a result of the alleged retaliation. It is clear that the plaintiff did suffer adverse action for his guilty charges through punishment, and there is an issue of fact as to whether these charges were the result of retaliatory measures taken by Lopez. Although she contends that the allegations of adverse action as to dismissed charges are speculation, Lopez has not presented evidence to refute plaintiff's allegations that he suffered adverse action from these marks on his record. There is no evidence presently before the court, such as administrative regulations or affidavits from prison officials stating that dismissed charges are not taken into account in transfer and employment decisions. There is also no affidavit from a parole board member stating that the board does not take dismissed charges into account.

The court concludes that Lopez has not met her burden of demonstrating that there are no genuine issues of material fact. There are genuine issues as to whether Lopez had retaliatory

---

[15] "Regardless if it carries no adverse actions with it, it is still there to be perused by the parole, by the probation department or whoever, and an individual can take whatever meaning they want. They can look at it and say, well, although it was dismissed, it is still on there, something happened. So it still does have the possibility of carrying a negative impact even being dismissed"; *see also id.*, D-MSJ 213, p. 134 ("not to mention the parole board may be swayed negatively by these accounts although false and dismissed by their presence in the Complaint...").

intent in drafting multiple notice of charges against the plaintiff for exercising his First Amendment rights, and whether these actions caused the plaintiff adverse consequences. Defendant's motion for summary judgment is denied as to count III.

## III. CONCLUSION

Based on the foregoing, the court concludes that the plaintiff did not incur "actual injury" in relation to the alleged destruction of his legal documents and therefore cannot prove that Lopez denied him access to the courts. The court further concludes that Lopez did not meet her burden of demonstrating that there is no genuine issue of fact regarding wether her actions were retaliatory in nature and resulted in adverse consequences for the plaintiff.

The court respectfully recommends that the defendant's motion for summary judgment (#238) **GRANTED** as to count I and **DENIED** as to count III.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)© and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

///

///

///

## IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the defendant's motion for summary judgment (#238) **GRANTED** as to count I and **DENIED** as to count III.

**DATED:** February 20, 2007.

Valerie P. Cooke

**UNITED STATES MAGISTRATE JUDGE**